800

Bruce McDonald, S. E. McDonald, and W. C. Turley, Executors, Estate of Bilton McDonald, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Bruce McDonald, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

J. K. Parsons, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

F. M. Burgess, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

J. W. Thornbury, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 21931–21935.  Promulgated January 14, 1930.

*E. L. Hogsett, Esq.,* for the petitioners.
*J. E. Mather, Esq.,* for the respondent.

803

OPINION.

SMITH: Petitioners' first contention is that section 280 of the Revenue Act of 1926 is unconstitional. This question is foreclosed by our decision in *Henry Cappellini et al.*, 14 B. T. A. 1269.

The second contention is that the petitioners are not liable for any tax due from the Mabel Coal Co. since the assessment against and collection of any such liability from them is barred by the statute of limitations. This contention is made in the petitions filed, but the basis thereof is not apparent. The petitioners' brief is silent upon this point.

Section 278 (d) of the Revenue Act of 1924 provides, so far as material:

Where the assessment of the tax is made within the period prescribed in section 277 or in this section, such tax may be collected by distraint or by a proceeding in court, begun within six years after the assessment of the tax.

The return of the Mabel Coal Co. for the fiscal period January 1 to November 30, 1919, was filed April 14, 1920. This return showed no tax due the Government. After an audit of the return the respondent determined that tax was due from the company for the fiscal period covered by the return in the amount of $26,022.24, which was assessed against the company on November 19, 1924, or within five years from the date the return was filed. See section 250 (d) of the Revenue Act of 1918. Under such circumstances the respondent had six years from November 19, 1924, within which to collect the assessment made against the Mabel Coal Co., the facts here being essentially different from those considered by the Supreme Court in *Russell* v. *United States*, 278 U. S. 181.

On October 18, 1926, the respondent sent a notice of deficiency, under the provisions of section 280 of the Revenue Act of 1926, to each of the petitioners, holding him liable for the entire tax, which was redetermined to be in the amount of $20,499.86. The petitions are based upon such notices of deficiencies.

Section 280 of the Revenue Act of 1926 provides in part as follows:

(b) The period of limitation for assessment of any such liability of a transferee or fiduciary shall be as follows:

(1) Within one year after the expiration of the period of limitation for assessment against the taxpayer; or

(2) If the period of limitation for assessment against the taxpayer expired before the enactment of this Act but assessment against the taxpayer was made within such period, then within six years after the making of such assessment against the taxpayer, but in no case later than one year after the enactment of this Act.

(3) If a court proceeding against the taxpayer for the collection of the tax has been begun within either of the above periods, then within one year after return of execution in such proceeding.

The notices of deficiencies were sent to the petitioners within one year after the enactment of the Revenue Act of 1926; also within six years after the date of the assessment against the taxpayer, which assessment was made prior to the enactment of the Revenue Act of 1926. We are of the opinion that the assessment was timely made and that the notices of deficiencies were sent to the petitioners before the statute of limitations had tolled with respect to them.

The third contention of the petitioners is that the respondent was in error in determining any taxes due from the petitioners and that in no event could the amount determined against each exceed his proportionate liability. This point was exhaustively considered by the Board in *Grand Rapids National Bank*, 15 B. T. A. 1166, in which we held that a transferee of the assets of a corporation, which has gone out of business, is liable for unpaid taxes of the corporation to the extent of the amount the transferee received in liquidation. The petitioners also contend that when they purchased the stock of the Huff Mining Co. they were intending to purchase the assets of that company and not its stock; that the petitioners perceived no difference between a purchase of the shares of stock of the mining company and of an interest in its assets; that in point of fact the distributions received by them in liquidation of the transferor corporation were less in amount than the price which they paid for their shares of stock; that they derived no income from the transaction and that a court of equity must take this fact into consideration in determining whether they are liable to any tax as transferees of the dissolved corporation.

The evidence is clear that the petitioners purchased shares of stock of the Huff Mining Co. and not the assets of that company. The Huff Mining Co. conducted operations as a corporation after the petitioners had acquired their stock in much the same manner as before; that is to say, the existence of the corporation was not affected by a change in the ownership of its shares. The corporation had the same assets after the petitioners acquired their stock as it

had before. This Board and the courts have consistently held that the stockholders of a corporation are separate and distinct entities from the corporation itself and that contracts entered into by the stockholders as such stand alone and on their own merits. See *W. S. Dudley*, 15 B. T. A. 570; *United States* v. *Board*, 14 Fed. (2d) 459.

There is no question but that each petitioner received in liquidation of the Mabel Coal Co. the amounts set forth in our findings of fact. If the Mabel Coal Co. is liable for any tax for the fiscal period January 1 to November 30, 1919, that liability is collectible from the petitioners under the provisions of section 280 of the Revenue Act of 1926. *Henry Cappellini et al., supra.*

The final question for our consideration is whether the transferor corporation is liable to any tax for the fiscal period January 1 to November 30, 1919. Section 912 of the Revenue Act of 1924, added by section 602 of the Revenue Act of 1928, provides that:

In proceedings before the Board the burden of proof shall be upon the Commissioner to show that a petitioner is liable as a transferee of property of a taxpayer, but not to show that the taxpayer was liable for the tax.

The petitioners allege error on the part of the respondent in finding that the Mabel Coal Co. had operating profits of $18,192.77 for the period January 1 to November 30, 1919, and also in finding that it sold its assets at the close of this period at a profit of $49,768.35. They contend that if any operating profits were made during the period they were all lost upon the sale of the property; further, that no profit was made upon the sale of the property; that the petitioners paid $130,000 for their shares of stock in the Huff Mining Co. and that the total amount received by them in distribution upon the liquidation of the Huff Mining Co. and of the Mabel Coal Co. was only $120,325, and that this is the total amount they received from their investment.

The evidence of record satisfies us that the return filed for the period in question did not correctly reflect the financial operations of the Mabel Coal Co. If any profits were made either by the Huff Mining Co. or its successor, the Mabel Coal Co., from the operation of the mines in 1919, the evidence indicates that such profits were lost upon the sale of the property. A large part of the profits, assuming that any were made, was invested in additional plant and equipment. No operating profits were ever distributed to the stockholders as a dividend and they were not in the treasury at the date of sale. The evidence further indicates that on November 30, 1919, the Mabel Coal Co. owed certain debts and that a part of the money received from the Faulkner Coal Co. upon the sale of its assets was utilized in the liquidation of such liabilities. The amount of such liabilities is, however, not in evidence.

The evidence is clear that the Mabel Coal Co. sold its assets at the close of the taxable period for $130,000 and that such amount was received either in cash or notes worth their face value from the Faulkner Coal Co. in payment for the assets purchased by it; that a portion of such amount was used in liquidating certain liabilities of the Mabel Coal Co., either accrued before or after November 30, 1919; and that the balance of the amount received was distributed to the petitioners. The return filed by the Mabel Coal Co. lists the assets sold at $167,513.68. Included in this total is " leasehold $87,282.31," which represented no capital outlay, either by the Huff Mining Co. or the Mabel Coal Co. The respondent has, therefore, excluded such amount from the value of the assets sold and has used the remainder of $80,231.37 as the cost of the assets sold by the Mabel Coal Co. for $130,000. The burden of showing error on the part of the respondent in making such determination is upon the taxpayer. *Avery* v. *Commissioner*, 22 Fed. (2d) 6. Neither the taxpayer nor the petitioners have met such burden.

The return which was filed by the Mabel Coal Co., for the fiscal period ended November 30, 1919, covered the operations of both the Huff Mining Co. from January 1, 1919, to the date when it transferred the bulk of its assets to the Mabel Coal Co. in July, 1919, and the operations of the Mabel Coal Co. from the date of its organization to November 30, 1919. The evidence of record shows nothing with respect to the fair market value of the assets of the Huff Mining Co. as of the date of transfer to the Mabel Coal Co. We can not determine that the cost or fair market value of the assets acquired by the Mabel Coal Co. in July, 1919, was any amount in excess of the cost of such assets to the Huff Mining Co. Indeed, no contention has been made to the contrary. Neither can we determine that the cost of those assets sold by the Mabel Coal Co. was more than $80,231.37, or that the Mabel Coal Co. operated at a loss to November 30, 1919.

We are of the opinion that the evidence of record does not warrant any reversal of the respondent's determination that the Mabel Coal Co. made a profit of $49,768.63 upon the sale of its assets in November, 1919. We think, however, that this amount constitutes the entire net income of the corporation for the taxable period involved and that the deficiency of the Mabel Coal Co. should be recomputed accordingly; likewise that the petitioners' liabilities should be recomputed to conform to the deficiency determined for the Mabel Coal Co.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*